UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61292-RKA

| | |
|---|---|
| JEREMY BLUMENAUER, individually and on behalf of all others similarly situated, | : : : |
| Plaintiff, | : : |
| v. | : : : |
| PETLAND, INC., and POOCHES OF PINES, INC. d/b/a PETLAND PEMBROKE PINES, | : : : : |
| Defendants. | : : |

**DEFENDANT, PETLAND, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Petland, Inc. ("Petland"), hereby moves pursuant to Fed. R. Civ. P. 12(b)(2) for an order dismissing the First Amended Class Action Complaint (ECF No. 10) (the "Amended Complaint" or "Am. Compl.") for lack of personal jurisdiction. The reasons in support of this motion are set forth in the incorporated Memorandum of Law.

**I.   INTRODUCTION**

The Amended Complaint is Plaintiff's second effort to try to establish personal jurisdiction over Petland based on a text message it did not send in a state where it otherwise does not operate. Much like Plaintiff's first attempt, the Amended Complaint also fails. In Plaintiff's initial Complaint (ECF No. 1) (the "Complaint"), Plaintiff alleged that Petland directly sent a text message to Plaintiff in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Petland demonstrated in its Motion to Dismiss (ECF No. 7) ("Initial Motion to Dismiss") that Plaintiff's allegations were flat-out wrong. Petland submitted unrebutted

evidence—that remains unrebutted in the Amended Complaint—that Petland did not send the alleged text message, did not know about the alleged text message, did not direct the sending of the text message, and does not have any contacts with Florida that create a basis for personal jurisdiction.  The Amended Complaint does not address this unrebutted evidence.  It simply ignores it.

The facts remain as follows: the text message allegedly sent to Plaintiff on its face shows that it was sent by a Petland franchisee operating in Florida.  A separate TCPA lawsuit against that Petland franchisee is pending before this Court (the "Franchisee Action").[1]  In a Notice of Related Action filed in that separate case, the franchisee has identified itself as the proper defendant in this action.  To be sure, the Franchisee Action arises out of the same message, sent on the same day, at the same time, from the same number, and with the same content as the text message allegedly received by Plaintiff.  (*Compare* Am. Compl. ¶ 14 *with* complaint in Franchisee Action (ECF No. 7-1) ¶ 29.)  This text message was not sent with Petland's knowledge, at its direction, or with its authority.  (*See* Declaration of Dale Davis (ECF No. 7-2) (the "Davis Declaration" or "Davis Dec.") at ¶ 9.)

These facts, set forth in Petland's Initial Motion to Dismiss, were supported by an unrebutted, sworn Declaration from Petland Compliance Analyst Dale Davis.  (*See* ECF No. 7-2.)  Rather than respond with affidavits or other competent proof in opposition to the Initial Motion to Dismiss, Plaintiff filed an Amended Complaint adding the franchisee, Pooches of Pines, Inc. d/b/a Petland of Pembroke Pines ("Franchisee") as a defendant to this action.  Plaintiff, however, has

---

[1] *See Fenwick v. Florida Pet Retailers, Inc. and Pooches of Pines, Inc. d/b/a Petland Pembroke Pines*, Case No. 0:19-cv-61080-MORENO (S.D. Fla.).

not dropped its claims against Petland, an Ohio-based company that does no business in Florida. Instead, he has simply tried to plead around the Davis Declaration.

Remarkably, Plaintiff has included new allegations that are *directly contrary* to those in the Davis Declaration.  For example, the Davis Declaration affirms, under penalty of perjury, among other things, that Petland (i) does not engage in marketing on behalf of its franchisee owned and operated stores, (ii) has never directly or indirectly been involved with sending text messages on behalf of any franchisee owned and operated stores, (iii) does not control the marketing of independently owned and operated franchise stores, (iv) has no involvement in any marketing plan that uses an automatic telephone dialing system to send text messages on behalf of any franchisee of Petland, and (v) was not even aware of the subject text messages until reviewing Plaintiff's Complaint and the allegations from the Franchisee Action.  In the Amended Complaint, Plaintiff alleges in conclusory fashion the exact opposite of these unrebutted statements from the Davis Declaration.  For example, Plaintiff includes these unsupported allegations: (i) "Petland controls franchisees in the all-important task of marketing the business in the franchisee's territory" (Am Compl. ¶ 8), (ii) the franchisee here used an ATDS to "send marketing text messages to Florida consumers at the direction of Petland" (*Id*. ¶ 12), and (iii) this marketing campaign [was] organized, coordinated, maintained, and otherwise controlled by Petland" (*Id*. ¶ 36).

The Amended Complaint should be dismissed for the same reasons as the initial Complaint. Despite Plaintiff's unsupported allegations to the contrary, Petland was not involved in sending any text messages to Plaintiff and is not subject to personal jurisdiction in Florida.  Thus, under constitutional due process considerations, Petland lacks sufficient minimum contacts with Florida and the Complaint should be dismissed for lack of personal jurisdiction.

## II.  FACTUAL BACKGROUND

### A.  Relevant Facts Alleged in the Complaint

In paragraph 14 of the Amended Complaint, Plaintiff partially reproduces a text message he claims to have received from Petland. Notably, the contents of this text message are identical to the contents of the text message reproduced in paragraph 29 of the Franchisee Action. Indeed, a side-by-side comparison of the two messages reflects that the two messages include the same exact graphic and message, and were sent from the same number, on the same exact date, and at the same exact time:

 

Plaintiff's Amended Complaint, ¶ 14        Franchisee Action, Complaint, ¶ 29

In the screenshot in the Amended Complaint (as in the original Complaint), the rounded corners are cut off at the bottom of the gray message box, reflecting that this screen shot may not capture

4

the entirety of the message. By contrast, the screen shot of the text message in the Franchisee Action captures the entirety of that message, and includes the following additional information at the bottom:

> Stop by our store:
> Petland Pembroke Pines
> 356 N University Drive,
> Pembroke Pines, FL  33024
> (945) 442-3106

Plaintiff further alleges that the Franchisee sent text messages to Plaintiff "at the direction of Petland and/or in accordance with a marketing campaign organized, coordinated, maintained, and otherwise controlled by Petland." (Am. Compl. ¶ 14.) Additionally, Plaintiff alleges that "due to the nature, scope, and control Petland has over the text messages in question, as well as the command and control Petland has over the marketing of the Petland brand with its franchisees, under a theory of vicarious liability, Petland (as the respective principal) is liable for the resulting TCPA violations that arise as a result of the complained of text messages sent by [the Franchisee] (as the respective agent) and/or any other franchisee of Petland." (*Id.* ¶ 37.) Furthermore, Plaintiff alleges: "*If Plaintiff's claim that Defendants routinely transmits [sic] text messages to telephone numbers assigned to cellular telephone services is accurate*, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case." (*Id.* ¶ 29 (emphasis added).) The only other allegations in the Amended Complaint that relate to personal jurisdiction over Petland are the conclusory jurisdiction and venue allegations referenced herein at page 8-9, *infra*.

B.  **Additional Facts Relevant to the Personal Jurisdiction Analysis**

In its Initial Motion to Dismiss, Petland introduced additional facts through the sworn Davis Declaration, which make abundantly clear that Petland is not subject to personal jurisdiction

in Florida. In the Amended Complaint, Plaintiff has included new allegations that are directly contradictory to those contained in the Davis Declaration. Thus, for purposes of this motion to dismiss the Amended Complaint, Petland refers back to the undisputed statements in the Davis Declaration. As the law of this Court and the Eleventh Circuit makes clear, in order to defeat a motion to dismiss in the face of evidence that challenges the basis for personal jurisdiction, the Plaintiff must come forward with *evidence* that establishes a basis for personal jurisdiction, and the Plaintiff may not simply rest on the allegations of the complaint. *See, e.g., Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1257 (11th Cir. 2010) (emphasis added).

Petland is an Ohio corporation with its headquarters and principal place of business in Ohio, and is the franchisor of a retail pet store concept. (Davis Decl. ¶¶ 3, 6.) Petland does not own any stores in Florida, it has no business operations in Florida, and it does not have any employees, agents, or representatives in Florida. (*Id*. ¶¶ 3-5.) Although Petland, through its franchise agreement, licenses certain marks to independently owned and operated franchise pet stores in various states, it does not engage in advertising or marketing on behalf of its franchisee-owned and operated stores, and does not control the marketing of the independently-owned and operated franchise stores. (*Id*. ¶¶ 6, 7, 10.) Petland has no ownership interest in and is not involved in the day-to-day operations of any stores in Florida. (*Id*. ¶¶ 3, 12.)

With respect to Plaintiff's allegations, Petland: (i) has no ownership interest in and is not involved in advertising or marketing on behalf of the franchisee owned and operated store located at 356 N. University Drive, Pembroke Pines, Florida 33024, that is alleged to have sent the subject text message that is the subject of the Franchisee Action; (ii) had no involvement in sending or directing the sending of the text in question; (iii) did not direct the Franchisee to send the text in question; (iv) has not done any direct marketing to Florida residents; and (v) has not used or

6

engaged others to do any direct marketing to Florida residents.  (Davis Decl. ¶¶ 8-11.)  To the contrary, Petland first learned of the existence of the text message that is the subject of Plaintiff's Amended Complaint upon reviewing a copy of the complaint filed in the separate Franchisee Action.  (*Id*. ¶ 9.)

### III.    ARGUMENT

#### A.    Legal Standard

A plaintiff bears the initial burden of proof in establishing personal jurisdiction over a nonresident defendant:

> A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009).  When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted).

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 783 (11th Cir. 2014).  When considering a motion to dismiss based on a lack of personal jurisdiction, the court may consider affidavits or other documents outside the pleadings.  *Internet Solutions Corp. v. Marshall*, 577 F.3d 1293, 1295 (11th Cir. 2009).  If a defendant presents affidavit evidence that challenges the existence of personal jurisdiction over it, "[t]he plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1257 (11th Cir. 2010).  To that end, the Court may only consider the allegations in the Amended Complaint as true if they are uncontroverted by Petland's affidavits.  *Madara*, 916 F.2d at 1514.  Plaintiff cannot meet its burden through the submission of an amended pleading that

makes conclusory allegations contrary to the Davis Declaration. Rather, the Plaintiff must come forward with competent factual evidence that establishes personal jurisdiction over Petland.

### B.     This Court Lacks Personal Jurisdiction Over Petland

The Eleventh Circuit has enumerated a two-part analysis to determine whether personal jurisdiction exists over a nonresident defendant. *Rowe v. Gary, Williams, Parteni, Watson & Gary, PLLC*, 723 Fed. Appx. 871, 874 (11th Cir. 2018). "First, the forum state's long arm statute must provide a basis for jurisdiction." *Id.* "Second, there must be sufficient minimum contacts to satisfy due process constitutional concerns." *Id.* Due process concerns are satisfied only if the defendant has sufficient "minimum contacts" with the forum state, such that requiring the defendant to defend itself in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

Plaintiff's jurisdiction and venue allegations are as follows:

> 1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331, and 28 U.S.C. 1332(d)(2).
>
> 2.    Venue in this District is proper because Plaintiff resides here, PETLAND transacts business here, [the Franchisee] transacts business here, and the complained conduct of Defendants occurred here.

(Am. Compl. ¶¶ 1-2.) The allegations in paragraph 1 of the Amended Complaint relate only to subject matter jurisdiction, and are not applicable to the question of whether the Court may exercise personal jurisdiction over Petland.[2] Thus, Plaintiff's personal jurisdiction allegations are limited to the following portions of paragraph 2: Petland "transacts business here" and "the complained

---

[2] The Class Action Fairness Act relates to the interpretation of diversity for purposes of establishing federal diversity jurisdiction, but does not alter the personal jurisdiction analysis applicable to a defendant. *Daniel v. Tootsie Roll Indus., LLC,* 17 CIV. 7541 (NRB), 2018 WL 3650015, at *9 (S.D.N.Y. Aug. 1, 2018) ("CAFA vests federal district courts with subject matter jurisdiction, not personal jurisdiction.").

[of] conduct of Defendants occurred here." (*Id.* ¶ 2.)  These scanty conclusory allegations (and the vague allegations that purport to support these allegations elsewhere in the Amended Complaint) are insufficient to support personal jurisdiction against Petland and, moreover, are contradicted by unrebutted evidence, as further demonstrated below.

        **1.**      **Florida's Long-Arm Statute does not provide a basis for jurisdiction over Petland.**

Although Plaintiff does not expressly refer to the Florida long-arm statute, Plaintiff's conclusory allegation that the "complained [of] conduct of Defendants occurred here" (Am. Compl. at ¶ 2) appears to invoke Fla. Stat. § 48.193(2).  Although the Amended Complaint includes allegations that the Franchisee sent the text at issue "at the direction, command and control of Petland" (Am. Compl. ¶ 36), and that "[s]aid text messages were sent as part of a marketing campaign organized, coordinated, maintained, and otherwise controlled by Petland," *Id.*, no basis for personal knowledge of such matters is set forth within the factual allegations of the Amended Complaint.  Indeed, because Petland had no involvement whatsoever in sending or directing the sending of the text message, no such actual facts could exist.

Numerous courts have recognized that a franchisor/franchisee relationship, without more, does not make the franchisor subject to jurisdiction in a franchisee's locale.  *See, e.g., Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700 (N.D. Ill. 2008) (resort chain was not subject to personal jurisdiction based on its franchisee's actions); *Ross v. Colorado Outward Bound Sch., Inc.,* 603 F. Supp. 306, 310 (W.D.N.Y. 1985) ("the mere existence of a garden-variety parent-subsidiary or franchisor-franchisee relationship, even if plaintiff has established such, is not sufficient to establish jurisdiction . . . ."); *Pestmaster Franchise Network, Inc. v. Mata*, 16-CV-07268-EMC, 2017 WL 1956927, at *4 (N.D. Cal. May 11, 2017) (dismissing franchisor based upon a lack of personal jurisdiction, and holding that "though Plaintiff argues for

specific personal jurisdiction based on AAAC's franchisee contacts in California, Plaintiff has not sufficiently shown how these contacts relate to the claims now in dispute. . . ."); *see also Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120-21 (Fla. 1995) (wherein the Florida Supreme Court rejected the notion that a franchisee's prominent use of a franchisor's trademarks and symbols and receipt of franchisor support were sufficient to establish either apparent agency or other vicarious liability of the franchisor for the alleged actions or inactions of a franchisee). In the instant case there is no connection between the alleged tortious act (*i.e.,* sending the text) and Petland.

### 2. The Court lacks general jurisdiction over Petland.

The Supreme Court has recognized two categories of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *See Daimler AG v. Bauman*, 571 U.S. 117, 127-28 (2014). Plaintiff's jurisdictional allegations fail to establish a basis for the Court to exercise either general jurisdiction or specific jurisdiction over Petland.

A Court cannot exercise general jurisdiction unless a foreign corporation's affiliations with the forum state are so "continuous and systematic" as to render the foreign corporation "at home" in the forum state. *Daimler AG*, 571 U.S. at 127. For a corporation, the "place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction" because those affiliations have the virtue of being unique (*e.g.*, each ordinarily indicates only one place) and are easily ascertainable for greater predictability. *Id.* at 137. The stringent bar for general jurisdiction is not met even where a nonresident corporation engages in a "substantial, continuous, and systematic course of business" in the forum state, because such activities—alone—do not render a corporation "at home" in that state. *Id.* at 137-39.

Since the Supreme Court's decision in *Daimler AG*, general jurisdiction for corporations has been confined to a company's place of incorporation and principal place of business absent

10

exceptional circumstances. *See Smith-Russo v. NCL (Bahamas) Ltd.*, 16-23821-CIV, 2017 WL 5565613, at *4 (S.D. Fla. July 26, 2017), report and recommendation adopted, 16-23821-CIV, 2017 WL 5591639 (S.D. Fla. Aug. 22, 2017) ("'[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business'"); *Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1336 n.7 (S.D. Fla. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *see also Rowe*, 723 Fed. Appx. 871, 874-75 (11th Cir. 2018). Petland is an Ohio corporation with its headquarters in Chillicothe, Ohio, with no offices, operations, or employees in Florida. (*See* Davis Dec. at ¶¶ 3-5.) No facts are alleged in the Amended Complaint to establish that Petland is "at home" in Florida. Accordingly, there is no basis for general jurisdiction. *See, e.g., Rowe*, 723 Fed. Appx. at 874-875; *see also BNSF Railway Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549 (2017) (holding that railway company's 2,061 miles of track, 2,100 workers, and an automotive facility—all in the State of Montana [along with something short of 10% of its revenue coming from Montana]—did not render BNSF "at home" in Montana for purposes of conferring general jurisdiction).

### 3.     The Court lacks specific jurisdiction over Petland.

The Eleventh Circuit considers three elements in determining whether specific jurisdiction may be asserted against a nonresident defendant:

> In specific jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.

*Rowe*, 723 Fed. Appx. 871, 874 (11th Cir. 2018) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). Despite Plaintiff's conclusory allegations to the contrary, Plaintiff's claims do not arise out of or relate to any Petland contact in Florida. Additionally,

11

during the time periods alleged in the Amended Complaint, Petland did not operate any pet stores or have any other operations in the State of Florida and, therefore, has not "purposely availed" itself of the privilege of conducting business within Florida. Rather, Petland's only contact with Florida that is relevant to the text message allegedly received by Plaintiff is the fact that Petland has a franchisor-franchisee relationship with the Franchisee identified in the text message. Accordingly, without more, it would offend "traditional notions of fair play and substantial justice" to exercise personal jurisdiction over Petland based on Plaintiff's alleged receipt of a text message that Petland did not send, and where Petland was not involved in directing, commanding, or controlling its Franchisee in sending that text message.

### a. **Plaintiff's claims do not arise out of or relate to Petland's contact with Florida**

To establish specific jurisdiction over Petland, Plaintiff must demonstrate that his claims arise out of or relate to Petland's contact with Florida. The Eleventh Circuit has explained this element of the specific jurisdiction test as follows:

> "[O]ur inquiry must focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'"
>
> * * *
>
> We have not developed a specific approach to determining whether a defendant's contacts "relate to" the plaintiff's claims, but we recently held that "[n]ecessarily, the contact must be a 'but-for' cause of the tort."

*Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (citations omitted). Here, the text at issue either references "Petland Florida" (*see* Am. Compl. ¶ 14) or adds the reference to a specific franchise store in Pembroke Pines that is independently owned and operated by a company other than Petland, *i.e.*, the Franchisee. (*See* Ex. 1 at ¶ 29.) Indeed, in the Franchisee Action, a different plaintiff alleges that the Franchisee alone sent (or directed to be sent) the same text message

content—from the same number, on the same day, and at the same time—as the text message that is the subject of this action. Because the Davis Declaration establishes that Petland did not send (or otherwise direct or cause to be sent) that very same text message, there is no causal, "but-for" relationship between the claims in this case and any contact Petland may have with Florida.

Apart from Plaintiff's incorrect and unsupported conclusory allegation that Petland directed or sent the text message in question, Plaintiff's other new allegations in the Amended Complaint fail to link Petland's purported contacts with Florida with the factual basis for Plaintiff's TCPA claim. These new allegations assert that Petland: (1) provided a point-of-sale system that can be used to obtain customer information and that can be used in a text messaging campaign (Am. Comp. at ¶¶ 7, 10-12), and (2) controls franchisee marketing and promotional campaigns (*id.* at ¶8). The new allegations also assert that point-of-sale and other software and hardware is provided by Petland to franchisees that could be used in connection with an auto-dialer and/or text messaging campaign. (*Id.* at ¶¶7, 10-11.) As an initial matter, Petland did not provide a point-of-sale system or any auto-dialing hardware or software to the Franchisee.[3] But even if it had, the mere provision of equipment that tracks customer information or that could be used for customer marketing is not the type of "but-for" involvement in the alleged wrongful conduct that could serve as a basis for specific jurisdiction. Plaintiff would have to establish a more direct link to the alleged wrongful conduct. With Petland having submitted declaration evidence that it was not involved in any respect with sending or directing the sending of the text message in question (or any text messaging campaign), Plaintiff must now come forward with competent affidavit or declaration evidence that establishes this link. Because there is no such evidence, Plaintiff cannot satisfy the first element of the test relating to specific jurisdiction.

---

[3] *See* Declaration of Dale Davis dated July 24, 2019, attached hereto as Exhibit 1.

      **b.**      <u>**Petland is not conducting activities in Florida or invoking the benefit of Florida's laws.**</u>

As set forth in the Davis Declaration, Petland does not operate any pet stores or have any other presence in the State of Florida. (*See* Davis Decl. ¶¶ 4-7.) Moreover, even if Petland had such a presence, that presence would not relate to the sending of the text message in question. *Roblor Mktg. Group, Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1142 (S.D. Fla. 2009) (dismissing complaint with prejudice for lack of personal jurisdiction where there was "no evidence in the record of any actual interaction with the state of Florida").

Indeed, the unrebutted evidence is that Petland: (i) has no ownership interest in and is not involved in advertising or marketing on behalf of the franchisee owned and operated store located at 356 N. University Drive, Pembroke Pines, Florida 33024, that is alleged to have sent the text message that is the subject of the Franchisee Action; (ii) had no involvement in sending or directing the sending of the text in question; (iii) did not direct the Franchisee to send the text in question; (iv) has not done any direct marketing to Florida residents; and (v) has not used or engaged others to do any direct marketing to Florida residents. (Davis Decl. ¶¶ 8-11.) Accordingly, Plaintiff cannot satisfy the second element of the Eleventh Circuit's specific jurisdiction test.

      **c.**      <u>**The exercise of personal jurisdiction over Petland in Florida would not comport with "traditional notices of fair play and substantial justice."**</u>

Plaintiff in this case seeks to sue Petland in Florida based upon conclusory allegations that the Franchisee sent the text at issue "at the direction, command and control of Petland," and that "[s]aid text messages were sent as part of a marketing campaign organized, coordinated, maintained, and otherwise controlled by Petland." (Am. Compl. ¶ 36.) But Petland's uncontroverted testimony establishes that it did not send the text message, and was not otherwise involved in directing or controlling the Franchisee in sending that text message. (Davis Decl. ¶¶

14

9-11.) To the extent Plaintiff intends to argue that jurisdiction should be asserted over Petland based on the Franchisee's actions—based solely on the fact that there is a franchisor-franchisee relationship between Petland and the Franchisee—it would be unfair to allow any franchisor to be hauled into a foreign jurisdiction based entirely on actions taken by any independent franchisee. Indeed, as the Supreme Court held in a franchisor-franchisee lawsuit, "the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 262, 472 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Unlike a franchisee who operates a business in a particular location and, thus, bears the risk and enjoys the benefits of its operation (such as obtaining the revenues and profits of the business), Petland neither incurs those same operational risks nor obtains those benefits. As a result, franchisors like Petland are not subject to claims and lawsuits in every locale where their franchisees operate, based solely upon the operations of their franchisees. *See Fischer v Enter. Rent-A-Car Co.*, CV-95-4876, 1996 WL 251426, at *3 (E.D.N.Y. Apr. 24, 1996) ("the fact that a franchisor licenses franchisees that operate in [a particular state] will not subject the franchisor to personal jurisdiction in [that state]"). Accordingly, the exercise of personal jurisdiction over Petland based solely on actions the Franchisee may have taken in Florida simply does not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

## IV.     CONCLUSION

Petland previously submitted sworn evidence through the Davis Declaration (ECF No. 7-2) demonstrating that it does not conduct business in Florida, did not send the text message allegedly received by Plaintiff, and did not direct, command, or control the Franchisee that was

responsible for sending that text. As a result, much like Plaintiff's initial Complaint, the conclusory allegations of Plaintiff's Amended Complaint are insufficient to establish a basis for personal jurisdiction over Petland. Because there is no basis for general or specific jurisdiction to be asserted over Petland, Petland respectfully requests that its motion to dismiss be granted.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF COUNSEL

Pursuant to Rule 7.1(a)(3) of the Local Rules, the undersigned counsel hereby certifies that he has conferred with counsel for Plaintiff via e-mail in a good faith effort to resolve the issues raised in this Motion. Plaintiff opposes the relief requested herein.

Respectfully Submitted,

STUMPHAUZER FOSLID SLOMAN
ROSS & KOLAYA, PLLC
2 South Biscayne Boulevard
Suite 2550
Miami, FL  33131
Telephone:  (305) 371-9686
Facsimile:   (305) 371-9687

By:     /s/ *Ian M. Ross*
        IAN M. ROSS
        Florida Bar No. 091214
        iross@sfslaw.com
        ADAM M. FOSLID
        Florida Bar No. 0682284
        afoslid@sfslaw.com
        TIMOTHY A. KOLAYA
        Florida Bar No. 056140
        tkolaya@sfslaw.com
        docketing@sfslaw.com

*Attorneys for Defendant Petland, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Ian M. Ross
IAN M. ROSS

## SERVICE LIST
*Blumenauer v. Petland, Inc.*
Case No. 0:19-cv-61292-RKA
United States District Court, Southern District of Florida

| | |
|---|---|
| Jibrael S. Hindi, Esq. | Matthew S. Sarelson, Esq. |
| Thomas J. Patti, Esq. | **KAPLAN, YOUNG & MOLL-PARRÓN** |
| **LAW OFFICE OF** | 600 Brickell Avenue, Suite 1715 |
| **JIBRAEL S. HINDI, PLLC** | Miami, Florida 33131 |
| 110 SE 6th Street | Telephone: (305) 330-6090 |
| Fort Lauderdale, FL 33301 | msarelson@kymplaw.com |
| Telephone: (954) 907-1136 | |
| jibrael@jibraellaw.com | *Counsel for Pooches of Pines, Inc. d/b/a* |
| tom@jibraellaw.com | *Petland Pembroke Pines* |

*Counsel for Plaintiff Jeremy Blumenauer*